THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. $207,766 UNITED STATES CURRENCY, Defendant (Derrick Aquino, Claimant-Appellant; Fred Morelli, Jr., Appellant).

Second District No. 2—98—1651

Opinion filed March 27, 2000.

Fred M. Morelli, Jr., of Law Offices of Morelli & Cook, of Aurora, for appellants.

David R. Akemann, State's Attorney, of St. Charles (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RAPP delivered the opinion of the court:

Attorney Fred Morelli, Jr., and claimant, Derrick Aquino, timely appeal from peripheral orders arising from the forfeiture of $207,766 and other property. On appeal, Morelli argues that his fee should be paid out of a portion of the forfeited funds. We disagree and affirm.

In January 1996, Aquino was charged with violations of the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 1996)). Incident to Aquino's arrest, the State seized all of his assets, including $207,766 in United States currency and other valuable property. Two months later, in March 1996, the State sought the forfeiture of the money and property in a civil forfeiture action pursuant to the Drug Asset Forfeiture Procedure Act (Act) (725 ILCS 150/1 *et seq.* (West 1996)).

Aquino retained Morelli to represent him on the state criminal charges and in the civil forfeiture action. Morelli and Aquino entered into a written contingent fee agreement. The agreement provided that Morelli would be paid 50% of the value of all property not forfeited to the State, and the agreement granted Morelli an attorney's lien.

Subsequently, Aquino was charged in the United States District Court for the Northern District of Illinois with violations of federal

narcotics laws. Aquino did not retain Morelli to represent him on those charges. On July 1, 1998, Aquino, while represented by another attorney, entered into a plea agreement in the federal case. In exchange for a 15% reduction in his sentence, the plea agreement required Aquino to cooperate in the prosecution of his codefendants and to execute documents waiving his claim to the seized money and property. In those documents, Aquino was required to admit that the money seized was obtained as a direct or indirect result of the violation of federal and state narcotics laws or that it was used or intended to be used in violation of federal and state narcotics laws. Aquino was also required to waive any right, title, and interest in the money and to pledge not to further prosecute his opposition to the forfeiture of the money in Kane County.

Later in the day on July 1, 1998, Morelli served notice of his attorney's lien in Kane County. On July 31, 1998, Morelli petitioned to adjudicate the lien, and on October 13, 1998, Aquino moved to release a portion of the seized funds in order to pay his attorney fees. In December 1998, the trial court denied both the petition and the motion based on the documents executed in the federal plea agreement and ordered the entire $207,766 forfeited to the State and distributed accordingly. This timely appeal followed.

Morelli launches a three-pronged attack in an attempt to get paid pursuant to his contingent fee retainer agreement with Aquino. Morelli first argues that the seizure of all Aquino's assets prevented Aquino from paying him; thus, the seizure and eventual forfeiture violated Aquino's qualified sixth amendment right to counsel of his choice. Second, Morelli argues that the failure of the trial court to hold a prompt postseizure probable cause hearing in the forfeiture action violated Aquino's due process rights; thus, he, Morelli, is entitled to a portion of the forfeited funds. Finally, Morelli argues that he is entitled to a portion of the forfeited funds by virtue of the attorney's lien Aquino granted him pursuant to the contingent fee retainer agreement.

In support of his first two arguments, Morelli cites *United States v. Moya-Gomez*, 860 F.2d 706 (7th Cir. 1988), and *United States v. Michelle's Lounge*, 39 F.3d 684 (7th Cir. 1994) (*Michelle's Lounge I*). In *Moya-Gomez*, the government froze all the assets of a federal criminal defendant with an *ex parte* restraining order as a prelude to *criminal forfeiture* proceedings. The defendant's attorney made a limited appearance in the trial court for the purpose of arguing that the defendant was entitled to a portion of the seized funds to pay for his criminal defense. The trial court found that the seizure violated the sixth amendment (U.S. Const., amend. VI) and therefore the defendant was entitled to a portion of the funds.

On appeal, the *Moya-Gomez* court initially addressed the question of whether the seizure of assets impinged on a criminal defendant's qualified sixth amendment right to retain counsel of his choosing. The court first noted that the relation-back doctrine, which makes assets forfeitable at the time the illegal actions took place, applied to federal forfeiture actions. The court then held that, pursuant to the relation-back doctrine, a defendant does not have a right to spend funds that are not his, and thus the seizure of all of the defendant's assets by the government did not absolutely violate the sixth amendment. *Moya-Gomez*, 860 F.2d at 725. But, the court further held that the same sixth amendment concerns, working through the fifth amendment (U.S. Const., amend. V), required greater judicial protection of a criminal defendant's right to counsel than an *ex parte* hearing afforded. *Moya-Gomez*, 860 F.2d at 729. According to the court, due process demands that the trial court hold a postseizure adversary hearing if the seizure of the defendant's assets leaves the defendant without other assets with which to pay for his criminal defense. *Moya-Gomez*, 860 F.2d at 730. At the hearing, the government would have to show probable cause that the assets were forfeitable (*"Moya-Gomez"* hearing). If the government could not, or chose not to, make such a showing, then the trial court was required to release a sufficient portion of the assets to pay reasonable attorney fees. *Moya-Gomez*, 860 F.2d at 730. *Michelle's* Lounge I extended *Moya-Gomez* to civil forfeiture proceedings. *Michelle's Lounge I*, 39 F.3d at 700-01.

Morelli argues that the *Moya-Gomez* line of cases controls this case. The State counters that, on the facts of this case, section 12 of the Act (725 ILCS 150/12 (West 1996)) controls. According to the State, section 12 of the Act precludes the recovery of attorney fees under any theory advanced by Morelli, irrespective of the *Moya-Gomez* line. This is a matter of statutory construction, so we apply a *de novo* standard of review. *People v. Robinson*, 172 Ill. 2d 452, 457 (1996).

In construing a statute our primary goal is to ascertain and give effect to the intent of the legislature. *Robinson*, 172 Ill. 2d at 457. The most reliable indicator of legislative intent is the plain meaning of the statutory language. *Robinson*, 172 Ill. 2d at 457. Where the language is clear and unambiguous, the statute must be applied as written without further aids of statutory construction. *Robinson*, 172 Ill. 2d at 457.

■ The Act provides a weapon in the State's arsenal in the "war on drugs." Under the Act, the State can seek civil forfeiture of property that is "used or intended to be used in [or] is attributable to" the possession, manufacture, or distribution of illegal drugs. 725 ILCS 150/2 (West 1996). This includes proceeds from drug transactions (725 ILCS 150/7 (West 1996)), except for those proceeds

"which constitute[ ] reasonable *bona fide* attorney's fees paid to an attorney for services rendered or to be rendered in the forfeiture proceeding or criminal proceeding relating directly thereto *where such property was paid before its seizure* \*\*\* and where the attorney, at the time he or she received the property[,] did not know that it was property subject to forfeiture under [the] Act." (Emphasis added.) 725 ILCS 150/12 (West 1996).

Furthermore, the Act contains a "relation-back" provision that states, "All property declared forfeited under [the] Act vests in [the] State on the commission of the conduct giving rise to forfeiture together with the proceeds of the property after that time." 725 ILCS 150/9(K) (West 1996).

Because the Act is based on the federal narcotics civil forfeiture statute, the legislature declared, in passing the Act, that it should "be construed in light of the federal forfeiture provisions contained in 21 U.S.C. [§ ]881 as interpreted by the federal courts, *except to the extent that the provisions of [the] Act expressly differ therefrom.*" (Emphasis added.) 725 ILCS 150/2 (West 1996). Morelli premises each of his arguments on the assumption that he is entitled under the Act to a portion of the seized funds even though no money was ever paid to him before the funds were seized and even though Aquino stipulated in his federal plea agreement that the funds were forfeitable.

Our decision in this case is based on one crucial difference between the Act and the federal narcotics civil forfeiture statute (21 U.S.C. § 881 (1994)). Unlike the Act, the federal narcotics civil forfeiture statute does not contain a corollary to section 12. Therefore, the *Moya-Gomez* line, being federal precedent, is inapplicable under the facts of this case.

Section 12 clearly applies in only very limited circumstances. Most significantly, section 12 only shields otherwise forfeitable funds paid as *bona fide* attorney fees from the forfeiture provisions where the funds were paid to the attorney prior to the seizure.

■ In this case, Morelli is seeking payment from funds that were seized prior to Aquino retaining Morelli. This is evidenced by the contingent fee retainer agreement entered into between Morelli and Aquino. Morelli admits in his brief that the agreement provided for the payment of "one-half the value of *all seized property* recovered." (Emphasis added.) Clearly, Morelli knew that the subject funds were already seized. Thus, unless the funds were later found not to be forfeitable, section 12 precluded Morelli from recovering his attorney fees in the first instance. Morelli has yet to receive any of the seized (now forfeited) funds. Thus, Aquino's motion to release assets to pay attorney fees ran afoul of section 12.

In light of the clear language of section 12, the only way Morelli would be entitled to any of the seized funds would have been to have all or a portion of them declared nonforfeitable. Interestingly, however, neither Morelli nor Aquino contests the validity of the trial court's forfeiture order. Morelli simply argues that he is entitled to a portion of the *forfeited* funds. We hold that under section 12 he is not.

Moreover, section 12 only shields otherwise forfeitable funds paid as *bona fide* attorney fees from the forfeiture provisions if, at the time the attorney received the funds, the attorney did not know that the funds were subject to forfeiture under the Act. Morelli's attempt to recover his fees after Aquino executed the stipulations pursuant to his plea agreement fails to satisfy this requirement. The documents executed by Aquino clearly establish that the funds were subject to forfeiture. Morelli's attempt to adjudicate his attorney's lien conflicted with section 12 because the attempt was not made until after Aquino admitted facts that clearly subjected the funds to forfeiture. Thus, there was no way, at the time Morelli attempted to adjudicate his lien, that he could assert that he was unaware that the funds were subject to forfeiture under the Act. In sum, the trial court properly denied Morelli's petition to adjudicate his attorney's lien and Aquino's motion to release a portion of the seized assets to pay attorney fees based, at least in part, on the documents executed by Aquino pursuant to his federal plea agreement.

Finally, we note that Morelli gambled in this case and lost. The contingent fee retainer agreement provided that Morelli would get paid only if he was successful in having a portion of the seized assets declared nonforfeitable. That contingency failed to materialize. Morelli's argument that Aquino's federal plea agreement constituted a breach of the contingency contract means only one thing—unless Morelli clearly showed a tortious interference with the contract on the part of the government, which he has not, he has a civil cause of action only against Aquino.

Moreover, even if the *Moya-Gomez* line is applicable to this case, we nonetheless affirm. A *Moya-Gomez* hearing does not absolutely entitle Morelli to a portion of the forfeited funds. *Moya-Gomez* only established the requirement that a trial court hold a prompt postseizure probable cause hearing. If the trial court finds after the hearing that probable cause of forfeitability exists, then a denial of attorney fees is proper.

The Act provides for a *Moya-Gomez* type of hearing. 725 ILCS 150/9(F) (West 1996) (requiring a probable cause hearing be held within 60 days after the claimant files an answer to the State's petition for civil forfeiture, unless the hearing is continued for good cause).

Nonetheless, a section 9(F) hearing was never held in this case. However, a section 9(F) hearing was scheduled in accordance with the statute. For almost two years, numerous agreed continuances were granted by the trial court after a showing of good cause. Shortly before Aquino entered his federal plea agreement, the trial court, over objection, granted a continuance to the State. Morelli does not argue in his brief that the continuance was not granted for good cause, and we find no indication of impropriety in the record. In our view, Morelli should have pushed for a section 9(F) hearing much earlier. He did not and, therefore, he cannot now complain that the failure to hold a section 9(F) hearing prejudiced him or his client.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and THOMAS, JJ., concur.