2022 IL App (2d) 200573-U
No. 2-20-0573
Order filed May 3, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-MR-1122 |
| $13,740 in United States Currency, | ) ) | |
| Defendants, | ) ) | Honorable Donna R. Honzel, |
| (Mark Rouleau, Claimant-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Claimant-Appellant filed a *pro se* appeal from the judgment declaring that $13,740 seized from his former client was forfeited to the State of Illinois pursuant to the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 *et seq*. (West 2018)) (Act). We affirm, finding that Claimant-Appellant failed to provide a sufficient record to support his contentions of error.

¶ 2                                I. BACKGROUND

¶ 3    On January 3, 2018, Stephen H. Iberg was stopped on Illinois Route 74 for having an expired 2017 California registration. During a search of the vehicle, Illinois State Police troopers

recovered a quantity of cannabis, a digital scale, and $13,740. Trooper D. Adams served Iberg with a "Notice of Seizure for Forfeiture," advising Iberg that "a preliminary review by the Circuit Court of the Seventeenth Judicial Circuit *** [would] be held at the Criminal Justice Center, located at 650 W. State Street, Rockford, Illinois in Courtroom A at 9:00 A.M. on Friday, the 12th day of January 2018." On January 12, 2018, the circuit court conducted its preliminary review in case No. 2018-MR-14. The only report of proceedings from that case is a three-page transcript from the preliminary review. Mr. Iberg did not appear. According to claimant-appellant, Mark Rouleu, Iberg failed to appear because he was given the wrong address and courtroom. The circuit court found that there was "probable cause to believe that the property may be subject to forfeiture."

¶ 4     On January 18, 2018, Rouleau filed an "Assignment for Legal Services," signed by Steven Iberg on January 11, 2018, in case No. 2018-MR-14. The assignment provides as follows:

> "NOW COMES the Claimant Stephen Iberg and assigns, quit claims, and transfers all right, title, and interest in fifty percent of $14,460[] to his attorney Mark Rouleau as and for attorneys' fees in connection with his representation in the above captioned action. Said Assignment is made in consideration of representation of the Claimant in the Circuit Court for the Nineteenth Judicial Circuit, Winnebago County, Illinois in connection with his claim to recover $14,460[] in United States Currency seized by the Illinois State Police. The Claimant acknowledges under Illinois law and rules of the Supreme Court of Illinois that he remains liable for any and all court costs, witness fees, and transcripts."

Rouleau sent notice of the filing to the State.

¶ 5     The record contains a "Corrected Notice for Seizure for Forfeiture," advising Iberg that a "preliminary review" would be held at the "Winnebago County Courthouse, located at 400 W.

State Street, Rockford, Illinois in Courtroom 317 at 1:00 P.M. on Monday, the 19th day of March 2018." The record does not contain any other documentation from 2018-MR-14.

¶ 6     On October 19, 2018, the State filed a "Complaint for Forfeiture" under a new case number, 2018-MR-1122, involving the same property.[1] Mr. Rouleau filed a motion to dismiss pursuant to 735 ILCS 5/2-619 (West 2018) on behalf of Iberg. The motion alleged that "claimant Stephen Iberg had not been given a notice of hearing within fourteen days as required by statute (725 ILCS 150/3.5[ (West 2018)])," and that "due process mandates that this proceeding be dismissed with prejudice."

¶ 7     On April 19, 2019, the trial court denied the motion to dismiss. In its written order, the trial court stated that it "[took] judicial notice of the timing and findings in 18 MR 14" and, "based on that review of filings and decisions in case no. 18 MR 14[,] denie[d] the motion to dismiss." The record does not contain a report of proceedings from the hearing on the motion to dismiss.

¶ 8     On July 19, 2019, the State filed an "Amended Complaint for Forfeiture." Rouleau was added as a claimant. In its amended complaint, the State added allegations that, on April 9, 2019, Iberg "waived his rights to any claims or possessory interest in the currency which is the subject of this pleading" in exchange for the State's agreement to reduce the offense from a Class 3 possession with intent to deliver cannabis to a Class A simple possession. The State noted that Iberg had not attempted to withdraw his plea, and that his "criminal attorney advised that he consulted with Mark Rouleau prior to Mr. Iberg entering into the plea." The State alleged that "Mr.

---

[1] The case caption lists the amount of currency as $14,460, which was the amount listed on Trooper Adams' notice of seizure for forfeiture.

Iberg's disavowal of any claim to this currency extinguishe[d] Mark Rouleau's claim to this currency."

¶ 9    On September 18, 2019, Rouleau filed a "Combined Motion to Strike or Dismiss the Amended Complaint." The 40-paragraph pleading concluded by arguing that the "complaint for forfeiture is void" for failure of the State to comply with the applicable statutes[,] and that all of the funds be returned to "Rouleau[,] the sole remaining claimant."

¶ 10    In its response to Rouleau's motion, the State pointed out that Rouleau "reallege[d] the same complaints that have been previously litigated and resolved against him, on multiple occasions, in this case and in 2018 MR 14." Rouleau filed a reply to the State's motion, again arguing that the complaint for forfeiture was void. On November 25, 2019, the trial court heard and denied Rouleau's combined motions "*for the reasons stated on the record.*" (Emphasis added.)

¶ 11    The statement of facts included in Rouleau's brief states that, "[a]fter other delays[,] the case proceeded to trial and the court entered a judgment for forfeiture." There is no report of proceedings of the trial in the record on appeal. The written judgment order reads as follows:

"1. Court finds that $13,740 USC is subject to forfeiture[.]

2. Court finds that [a]ssignment to Claimant Rouleau was contingent upon the court finding the money was not to be forfeited. Because the property is determined to be forfeitable/to be forfeited, the [c]ourt denies Mr. Rouleau's motion for turnover pursuant to that assignment.

3. Court orders $13,740 US [c]urrency forfeited to the Director of Ill. State Police pursuant to 725 ILCS 150/1 *et seq*. [(West 2018).]"

¶ 12    The State's trial exhibits included a copy of the April 9, 2019, order from Iberg's criminal case, stating that Iberg "hereby agrees to the forfeiture of $13,740 (see 18MR1122) and gives up

any possessory interest in the $13,740.00 [U]nited [S]tates currency." Rouleau's exhibits included the "Assignment for Legal Services" signed by Iberg.

¶ 13    Rouleau filed a timely notice of appeal seeking: 1) reversal of the September 3, 2020 forfeiture order; 2) reversal of the trial court's order finding probable cause based on untimely and incorrect notice of hearing and an unsigned petition for probable cause hearing; and 3) reversal of the court's order denying claimant's motion to dismiss.

¶ 14                                    ANALYSIS

¶ 15    On appeal, Rouleau argues that the notice given to Iberg sent him to the wrong courtroom at the Winnebago County Criminal Justice Center at 650 W. State St., Rockford, instead of courtroom 316 at the Winnebago County Courthouse at 400 W. State St., Rockford. As such, Rouleau argues that the hearing was not commenced within 14 days from the date of the instant seizure, as mandated by 725 ILCS 150/3.5(a) (West 2018). Instead, Rouleau points out that he had been retained "on a contingent basis" by Iberg, and "they were not given a hearing until June 8, 2018." Rouleau argues that the State also failed to "timely serve claimants with the required 'notice of pending forfeiture' " pursuant to 725 ILCS 150/4, 5, 6 (West 2018), requiring reversal.

¶ 16    The State argues that: 1) the record on appeal is insufficient; 2) Rouleau does not have standing because his interest was based on a contingency that never materialized; and 3) Rouleau's arguments are forfeited because he failed to appeal the final order in 2018-MR-14, which is the case in which he maintains the errors occurred.

¶ 17    In his reply brief, Rouleau argues that the State's standing argument is waived because it was not raised in the trial court. We agree with Rouleau. "Under Illinois law, lack of standing is an affirmative defense, which is the defendant's burden to plead and prove." *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010).

¶ 18    The State next argues that Rouleau has not provided a sufficiently complete record of the proceedings in the trial court to support his claims of error. In the absence of such a record, it will be presumed that the orders entered by the trial court are in conformity with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Rouleau responds by arguing that, "[a]s a matter of law based upon the pleadings," the failure of the State to give notices within the statutory time periods requires barring forfeiture and a return of the seized funds. We agree with the State. Rouleau's arguments regarding the lack of notice all involve the proceedings in case No. 2018-MR-14. In denying Rouleau's combined motion to dismiss, the trial court took judicial notice of the "filings and decisions in case no. 18 MR 14." In the instant case, the record contains no report of proceedings, no bystanders' report, and no agreed statement of facts for either the hearings on Rouleau's motions or the trial, as required by Illinois Supreme Court Rule 323(c), (d) (eff. July 1, 2017). We will not speculate as to what the "filings or decisions" referenced by the trial court were based upon. We must presume that the orders entered by the trial court were in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392.

¶ 19    While we resolve this appeal based upon the principles set forth in *Foutch*, we also set forth an alternative basis to affirm the judgment of forfeiture. The State argues that our decision in *People v. $207,766 U.S Currency*, 312 Ill. App. 3d 454, 455 (2000), as well as an application of section 12 of the Act (725 ILCS 150/12 (West 2018)) (status of property constituting attorney's fees) preclude Rouleau "from recovering fees pursuant to the contingent fee agreement." In *$207,766 U.S Currency*, attorney Fred Morelli was hired by Derrick Aquino, who had been arrested and charged with violations of the Controlled Substances Act. 312 Ill. App. 3d at 454. Incident to the arrest, in January 1996, the State seized the currency and other property. *Id.* at 455. The State sought the forfeiture of the money and property pursuant to the Drug Asset Forfeiture

Procedure Act (DAFPA). *Id.* Aquino and Morelli entered into a "written contingent fee agreement." *Id.* The agreement provided that Morelli would be paid "50% of the value of property not forfeited to the State, and the agreement granted Morelli an attorney's lien." *Id.* Aquino was subsequently charged with violations of federal narcotics laws. *Id.* at 455-56. On July 1, 1998, while represented by another attorney, Aquino entered into a plea agreement in the federal case. *Id.* at 456. As part of that plea agreement, Aquino agreed to waive "his claim to the seized money and property." *Id.* Later in the day of July 1, 1998, Morelli served notice of his attorney's lien in Kane County. *Id.* Morelli petitioned to adjudicate the lien, and, on October 13, 1998, Aquino moved to release a portion of the seized funds to pay his attorneys' fees. *Id.* The trial court denied both Morelli's petition and Aquino's motion based on the "federal plea agreement and ordered the entire $207,766 forfeited to the State and distributed accordingly." *Id.*

¶ 20    On appeal, Morelli argued that: 1) the seizure of all of Aquino's assets prevented Aquino from paying him, thus violating Aquino's sixth amendment right to counsel of his choice; 2) the failure of the trial court to hold a prompt post-seizure probable cause hearing in the forfeiture action violated Aquino's due process rights, and thus, Morelli was entitled to a portion of the funds; and 3) Morelli was entitled to a portion of the forfeited funds by virtue of the attorney's lien Aquino granted to him pursuant to the contingent fee retainer agreement. *Id.*

¶ 21    This court rejected Morelli's arguments. *Id.* at 459. We noted that DAFPA "provides a weapon in the State's arsenal in the 'war on drugs.' " *Id.* at 457. We further noted that,

"Under the Act, the State can seek civil forfeiture of property that is 'used or intended to be used in, [or] is attributable to' the possession, manufacture, or distribution of illegal drugs. [Citation.] This includes proceeds from drug transactions [citation], except for those proceeds 'which constitute[] reasonable *bona fide* attorney's fees paid to an attorney for

services rendered or to be rendered in the forfeiture proceeding or criminal proceeding relating directly thereto *where such property was paid before its seizure* *** and where the attorney, at the time he or she received the property[,] did not know that it was property subject to forfeiture under [the] Act.' " (Emphasis in original.) *Id.* at 457-58 (citing 725 ILCS 150/12 (West 1996)).

We also noted that the Act contains a "relation-back" provision in section 150/9, which states, "All property declared forfeited under [the] Act vests in [the] State on the commission of the conduct giving rise to forfeiture together with the proceeds of the property after that time." *Id.* at 458 (citing 725 ILCS 150/9(K) (West 1996)). Rouleau, like Morelli, premises his argument on the assumption that, by virtue of this contingent fee agreement with Iberg, he is entitled to a portion of the seized funds, despite the facts that no money was ever paid to him before the seizure and that Iberg stipulated in his plea agreement that the funds were forfeitable. Rouleau knew at the time Iberg signed the "Assignment for Legal Services" that the currency was subject to forfeiture. As in *$207,766 U.S Currency*, under the clear language of section 12, the only way Rouleau "would be entitled to any of the seized funds would have been to have all or a portion of them declared nonforfeitable." *Id.* at 459. As to any defects in the notice, Iberg waived any due process challenge when he pled guilty and agreed to forfeiture. See *Libretti v. U.S.*, 516 U.S. 29, 51 (1995) (plea agreement and plea colloquy waived right to insist on a jury determination of forfeitability). Like Morelli, Rouleau "gambled in this case and lost." *$207,766 U.S Currency*, 312 Ill. App. 2d at 459.

¶ 22                                                    CONCLUSION

¶ 23     For all of the forgoing reasons, we affirm the trial court's order declaring the seized currency forfeited.